UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOEL P. ALCARMEN,<br><br>       Plaintiff,<br><br>    v.<br><br>CITIBANK N.A., *et al.*,<br><br>       Defendants.<br>_____/ | No. C-09-0853 EMC<br><br>**ORDER REMANDING CASE TO STATE COURT**<br><br>**(Docket No. 5)** |

    Plaintiff Joel P. Alcarmen has filed suit against Defendants Citibank, N.A. (as trustee for WaMu Series 2007-HE3 Trust), Washington Mutual, and California Reconveyance Company ("CRC"), seeking, in essence, invalidation of a trustee's sale of certain real property. Currently pending before the Court is Defendants' motion to dismiss. Prior to the hearing on Defendants' motion, the Court asked the parties for supplemental briefing on whether there was subject matter jurisdiction over the case, which Defendants had removed from state to federal court. Having considered those supplemental papers, as well as the oral argument of counsel and all other evidence of record, the Court hereby finds that subject matter jurisdiction is lacking and therefore **REMANDS** the case to state court. Because the Court is remanding the case for lack of subject matter jurisdiction, it does not entertain the merits of Defendants' motion to dismiss.

## I.    FACTUAL & PROCEDURAL BACKGROUND

    In his complaint, Mr. Alcarmen alleges as follows. In or about March 2007, Washington Mutual loaned Mr. Alcarmen $603,000 in order for him to purchase certain real property located in Hayward, California. *See* Compl. ¶¶ 2, 13. Mr. Alcarmen was not given certain disclosures about his loan rate, as required by state law. *See* Compl. ¶ 14 (referring to Cal. Civ. Code § 1916.7(c)). In

1 addition, Mr. Alcarmen did not receive, within one day of the close of escrow, a HUD-1 Settlement
2 Statement, as required by federal law. *See* Compl. ¶ 15. Finally, the Truth in Lending Statement
3 that Mr. Alcarmen did receive understated the finance charge on the loan by over $15,000. *See*
4 Compl. ¶ 16.

5 According to Mr. Alcarmen, because of Defendants' "failure to disclose the true cost of the
6 loan, [he] defaulted on the loan." Compl. ¶ 17. Thereafter, in November 2007, Defendants had a
7 Notice of Default recorded with the Alameda County Recorder's Office. *See* Compl. ¶ 17. The
8 Notice of Default did not include a declaration that there had been a diligent attempt to contact the
9 borrower or that the borrower had surrendered the property. *See* Compl. ¶ 18.

10 Subsequently, a Notice of Trustee Sale was recorded with the Recorder's Office. *See* Compl.
11 ¶ 17. The Notice was required, under California law, to provide "either a toll-free telephone number
12 or telephone number in this state of the trustee [for the deed of trust]," Cal. Civ. Code § 2924f(b)(1),
13 but, according to Mr. Alcarmen, did not do so. Had it done so, then Mr. Alcarmen "could have
14 contacted the Trustee to try to work out a reinstatement." Compl. ¶ 20.

15 Ultimately, a trustee's sale took place on July 2, 2008. *See* Compl. ¶ 21. Apparently, the
16 property was purchased by Citibank, with a trustee's deed upon sale being executed by CRC to
17 Citibank. *See* Compl. ¶ 21. A Notice of Assignment was recorded on July 9, 2008, assigning the
18 deed of trust. *See* Compl. ¶ 22. On July 13, 2008, a process server gave notice to the occupants of
19 the property that they were to vacate the premises. *See* Compl. ¶ 23. Subsequently, on September
20 25, 2008, Citibank filed an unlawful detainer action against Mr. Alcarmen. That suit is still pending.
21 *See* Compl. ¶ 24.

22 Based on the above allegations, Mr. Alcarmen filed a complaint in state court, asserting
23 claims for declaratory relief, conspiracy, breach of the covenant of good faith and fair dealing, fraud,
24 unfair business practices, unjust enrichment, breach of fiduciary duty, setting aside the trustee's sale,
25 canceling the trustee's deed, and quiet title. All of these claims are state law claims. However, two
26 of the claims -- *i.e.*, the unfair business practices claim and unjust enrichment claim -- make
27 reference to federal law. More specifically, in the unfair business practices claim (asserted against
28 Washington Mutual only), Mr. Alcarmen alleges that Washington Mutual misrepresented "the true

2

amount of the prepaid finance charges by providing an inaccurate final TILA [*i.e.*, Truth in Lending Act] disclosure." Compl. ¶ 54. In the unjust enrichment claim (asserted against all Defendants), Mr. Alcarmen alleges that, because Washington Mutual violated TILA, "a right of rescission pursuant to TILA . . . is available to [him]," Compl. ¶ 57, and the rescission makes the monthly mortgage payments, as well as the eventual gain of the property after foreclosure, an unjust enrichment. *See* Compl. ¶ 58.

After being served with the complaint, Defendants removed the case to federal court, claiming that there is federal question jurisdiction, *see* Docket No. 1 (notice of removal), and, soon after removing the case, Defendants filed their currently pending motion to dismiss. Subsequently, the Court requested that the parties file supplemental briefing addressing the issue of whether it has subject matter jurisdiction over the case.

## II. DISCUSSION

The Court may not entertain Defendants' motion to dismiss unless there is subject matter jurisdiction in the instant case. As stated above, and as reflected in their notice of removal, Defendants claim that there is federal question jurisdiction. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). More specifically, Defendants claim that "[t]he action arises from the laws of the United States, because in the Complaint, Plaintiff alleges violation of the Truth in Lending Act [and] Regulation Z." Docket No. 1 (Not. ¶ 4). Defendants refer specifically to pages 10 and 11 of the complaint. These pages cover the claims for unfair business practices and unjust enrichment.

The Supreme Court has held that a case "arises under" federal law for § 1331 purposes when federal law either (1) creates the cause of action or (2) the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983). The reasoning underlying the second category of cases is that, if there is a substantial question of federal law, then it is appropriate to "resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 312 (2005). In

*Grable*, however, the Supreme Court indicated that even a substantial question of federal law does not necessarily require a finding of subject matter jurisdiction. Instead, the Court framed the issue as follows: "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314 (emphasis added).

There is no dispute that the instant case does not fall under the first category of cases -- the claims for unfair business practices and unjust enrichment are clearly created by state law, not federal. The question is whether this case falls under the second category -- *i.e.*, whether Mr. Alcarmen's right to relief for the unfair business practices and unjust enrichment claims depends on resolution of a substantial question of federal law.

The Court agrees with Defendants that a question of federal law is clearly implicated by the claims for unfair business practices and unjust enrichment. Both of these claims are predicated on there being a violation of TILA, a federal statute. However, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 813 (1986). There must be a *substantial* federal question. In *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006), the Supreme Court indicated that a substantial federal question would be at issue if resolution of the federal question would both be (1) dispositive of the case and (2) controlling in numerous other cases.[1] *See id.* at 700. Thus, for example, in *Grable*, there was a substantial federal question because (1) it appeared that the only issue contested in the case was the federal question of whether the IRS had complied with a federal statute and (2) the federal question "presented a nearly 'pure issue of law,' one 'that could be settled once and for all and thereafter would govern numerous tax sale cases.'" *Id.* at 700.

---

[1] *See also Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 570 (6th Cir. 2007) (stating that "four aspects of a case or an issue . . . affect the substantiality of the federal interest in that case or issue: (1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated)").

4

Where a case is "fact-bound and situation specific," a substantial federal question is less likely to be found. *Id.* at 701 (noting that plan administrator's reimbursement claim was "fact-bound and situation specific"; ultimately concluding that there was no federal question jurisdiction over the claim); *see also Potter v. Hughes*, 546 F.3d 1051, 1065 (9th Cir. 2008) (noting that, "[i]n *Grable*, the [Supreme] Court determined it had federal question jurisdiction over a state claim where 'the meaning of the federal statute' was an essential element of a state quiet title action"); *In re Countrywide Fin. Corp. Mortg. Marketing & Sales Practices Litig.*, Nos. 08md1988 DMS (LSP), 08cv1903 DMS (LSP), 2008 U.S. Dist. LEXIS 105440, at *19 (S.D. Cal. Dec. 30, 2008) (concluding that there was no substantial federal issue because, *inter alia*, "[t]here is no dispute about the meaning or construction of any federal statute"); *Finch v. Wisconsin Auto Title Loans, Inc.*, 586 F. Supp. 2d 1070, 1076 (W.D. Wis. 2008) (stating that "[a] substantial federal question is not present when the federal issue is 'fact-bound and situation-specific'").

In the instant case, Defendants have failed to show that resolution of the federal question in this case would be controlling in numerous other cases. Mr. Alcarmen simply claims that he was provided an inaccurate TILA disclosure because it did not disclose "the true amount of the prepaid finance charges." Compl. ¶ 54. This presents a fact intensive question peculiar to this instant case. This will not require the Court to interpret or construe TILA in any significant way or to otherwise resolve a nearly pure issue of law. Notably, at least one district court has concluded that there is "no substantial issue of TILA interpretation" where a plaintiff's claim is predicated on TILA's requiring an accurate disclosure of the finance charge and APR. *Finch*, 586 F. Supp. 2d at 1076 (noting that "defendant could not seriously dispute that, as plaintiff alleges, TILA requires the accurate disclosure of the finance charge and APR" and so "this case presents no substantial issue of TILA interpretation").

At the hearing, Defendants argued for the first time that there was a legal question that the Court would have to resolve which would have bearing on numerous other cases -- *i.e.*, whether a plaintiff is entitled to rescind under TILA when the property at issue has already been sold (as in this case). This legal question, however, need not be resolved in the case at bar. The legal question that must be resolved in the instant case is only whether TILA has been violated; a court need not decide

5

what remedies are available for a violation of TILA (such as rescission) because the remedies that will be available to Mr. Alcarmen will be dictated by state law, since the causes of action he has pled are state law claims, not TILA claims. *See West 14th Street Commercial Corp. v. 5 West 14th Owners Corp.*, 815 F.2d 188, 193 (2d Cir. 1987) ("[The Supreme Court in] *Merrell Dow* held that when Congress has provided no private right of action under a federal statute, the borrowing of that federal law as a standard of conduct in a state created action is not sufficiently substantial to confer federal question jurisdiction."). The Court acknowledges that, in his unjust enrichment claim, Mr. Alcarmen specifically refers to a right to rescind under TILA, *see* Compl. ¶ 57, but this allegation about rescission is superfluous or unnecessary. If Defendants have been unjustly enriched, then whether or not Mr. Alcarmen has a right to rescind as a remedy under TILA is immaterial; the remedy for the unjust enrichment will be disgorgement of the benefit -- a matter governed by state law. At bottom, as pled, the alleged violation of federal law provides the basis for the alleged wrongful conduct; it does not provide the remedy. Hence, the federal legal question posited by Defendants need not be resolved in the instant case.

As a final point, the Court notes that its finding that this case raises no substantial federal question comports with the congressionally approved balance of federal and state judicial responsibilities. *See Grable*, 545 U.S. at 314. Congress has expressly conferred on state courts -- not just federal courts -- the authority to entertain TILA claims. *See* 15 U.S.C. § 1640(e) ("Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."); *see also In re Countrywide Fin. Corp. Mortg. Marketing & Sales Practices Litig.*, 2008 U.S. Dist. LEXIS 105440, at *21 (S.D. Cal. Dec. 30, 2008) (noting that "[t]he existence of concurrent jurisdiction [over TILA and RESPA claims] indicates Congress intended for the balance of judicial responsibility for these claims to be shared between state and federal courts"); *cf. Bolden v. KB Home*, No. CV 08-02682 DDP (FFMx), 2008 U.S. Dist. LEXIS 65275, at *23 & n.6 (C.D. Cal. July 24, 2008) (noting that there were circumstances militating against finding a substantial federal issue – *i.e.*, "the absence of an exclusive federal jurisdiction provision in the FIRREA and where the federal standard here is one written and interpreted entirely by a non-governmental organization, not

Congress or federal regulatory agencies"); *Alpert v. Time Warner Cable, Inc.*, No. 08-CV-0582 W (WMC), 2008 U.S. Dist. LEXIS 51623, at *21-22 (S.D. Cal. July 1, 2008) (stating that "Time Warner has not shown that disputes involving cable television billing (unlike federal taxes or tariffs) are within the peculiar expertise of federal courts or automatically trigger exclusive federal jurisdiction.").

### III. CONCLUSION

For the foregoing reasons, the Court remands the case to the state court from which it was removed for lack of subject matter jurisdiction. The Court makes no ruling on the merits of Defendants' motion to dismiss.

This order disposes of Docket No. 5. The Clerk of the Court is directed to close the file in this case.

IT IS SO ORDERED.

Dated: May 13, 2009

_____
EDWARD M. CHEN
United States Magistrate Judge